**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
DAVID F.                      :    Civ. No. 3:21CV00315(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION[1]    :    December 16, 2021
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff David F. ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves for an order reversing the

---

[1] Plaintiff has named Andrew Saul, a <u>former</u> Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. <u>See</u> Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

Commissioner's decision. [Doc. #16]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner [Doc. #20], to which plaintiff has filed a reply [Doc. #22].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #16]** is **GRANTED, in part**, to the extent he seeks a remand for a new hearing, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **DENIED**.

## I.   PROCEDURAL HISTORY[2]

Plaintiff filed concurrent applications for SSI and DIB on July 5, 2016, alleging disability beginning October 15, 2015. See Certified Transcript of the Administrative Record, Doc. #14, compiled on June 8, 2021, (hereinafter "Tr.") at 383-96. Plaintiff's applications were denied initially on September 9, 2016, see Tr. 193-96, and upon reconsideration on January 3, 2017. See Tr. 208-14.

On April 25, 2018, plaintiff, then self-represented, appeared at a hearing before Administrative Law Judge ("ALJ") Edward Sweeney. See generally Tr. 117-22. At the outset of that hearing, plaintiff stated that he "did talk to a lawyer, and he

---

[2] Plaintiff filed a Statement of Material Facts with his motion and supporting memorandum, see Doc. #16-2, to which defendant filed a response, see Doc. #20-2.

asked me to ask for a continuance[]" of the hearing. Tr. 120. The ALJ then "explain[ed plaintiff's] rights" and continued the hearing to a later date. Tr. 120; see also Tr. 120-22. No substantive testimony was taken at this hearing.

On July 25, 2018, plaintiff, represented by Attorney Russell Zimberlin, appeared and testified at a second administrative hearing before ALJ Sweeney. See generally Tr. 81-116. Vocational Expert Richard Hall testified by telephone at the July 25, 2018, administrative hearing. See Tr. 82, Tr. 110-16. On August 15, 2018, the ALJ issued an unfavorable decision (the "2018 decision"). See Tr. 165-85. On November 19, 2019, the Appeals Council granted plaintiff's request for review of the ALJ's 2018 decision, vacated the 2018 decision, and remanded the case to ALJ Sweeney. See Tr. 186-91. The Appeals Council remanded the case because "[t]he opinion evidence was not adequately evaluated[,]" Tr. 188, and "[t]he hearing decision does not consider or address evidence in the form of a Medical Source Statement from Sean Noel, D.C., dated July 13, 2016 (5 pages), mislabeled in the electronic file as 'Medical Consultant's Review of Physical RFC' and marked as 'DUP.'" Tr. 189.

On April 15, 2020, the ALJ held a third administrative hearing, at which only vocational expert testimony was taken.

See generally Tr. 60-74. Vocational Expert Hank Lerner testified at the third administrative hearing by telephone. See id. On April 23, 2020, the ALJ issued a second unfavorable decision (hereinafter the "2020 decision"). See Tr. 38-59. On January 28, 2021, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's 2020 decision the final decision of the Commissioner. See Tr. 29-35. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). **The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ.** See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (emphasis added).

The Court does not reach the second stage of review –
evaluating whether substantial evidence supports the ALJ's
conclusion – if the Court determines that the ALJ failed to
apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d
33, 70 (S.D.N.Y. 2012) ("The Court first reviews the
Commissioner's decision for compliance with the correct legal
standards; only then does it determine whether the
Commissioner's conclusions were supported by substantial
evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d
Cir. 1999))). "Where there is a reasonable basis for doubt
whether the ALJ applied correct legal principles, application of
the substantial evidence standard to uphold a finding of no
disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made
according to the correct legal principles." Johnson v. Bowen,
817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is

not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV04113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III. <u>**SSA LEGAL STANDARD**</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he

> is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d
Cir. 2010) (alteration added); Poupore v. Astrue, 566 F.3d 303,
306 (2d Cir. 2009) (per curiam). The residual functional
capacity ("RFC") is what a person is still capable of doing
despite limitations resulting from his physical and mental
impairments. See 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1).
"In assessing disability, factors to be considered are (1) the
objective medical facts; (2) diagnoses or medical opinions based
on such facts; (3) subjective evidence of pain or disability
testified to by the claimant or others; and (4) the claimant's
educational background, age, and work experience." Bastien v.
Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for
benefits is to be determined in light of the fact that 'the
Social Security Act is a remedial statute to be broadly
construed and liberally applied.'" Id. (quoting Haberman v.
Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   THE ALJ'S 2020 DECISION

Following the above-described evaluation process, the ALJ
concluded that plaintiff had "not been under a disability within
the meaning of the Social Security Act from October 12, 2015,
through the date of" the ALJ's decision, April 23, 2020. Tr. 42;
see also Tr. 52. At step one, the ALJ found that plaintiff had
not engaged in substantial gainful activity since the alleged

onset date of October 12, 2015. See Tr. 43. At step two, the ALJ found plaintiff had the severe impairments of "degenerative disk disease of the cervical and lumbar spines[.]" Tr. 44. The ALJ found that plaintiff's "bilateral knee pain, mild cognitive disorder, and adjustment disorder[] ... do not cause more than a minimal limitation in [plaintiff's] ability to perform basic work activities and are therefore nonsevere." Tr. 44; see also Tr. 44-46.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 46. In making that determination, the ALJ "carefully considered all of the listed impairments, and, in particular, 1.00 Musculoskeletal System." Id. The ALJ specifically considered Listing 1.04 (disorders of the spine). See id. Before moving on to step four, the ALJ determined that plaintiff had the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally climb ladders, ropes, and scaffolds and occasionally reach overhead with the bilateral upper extremities." Id.

At step four, the ALJ concluded that plaintiff was "capable of performing past relevant work as a flagger[,]" because

"[t]his work does not require the performance of work-related activities precluded by" plaintiff's RFC. Tr. 51.

**V.   <u>DISCUSSION</u>**

Plaintiff asserts several arguments in support of reversal or remand, including, in pertinent part, that the ALJ failed to properly evaluate plaintiff's credibility. <u>See generally</u> Doc. #16-1; Doc. #22. For the reasons that follow, the Court finds that the ALJ erred in his credibility determination. Although the Court will remand this matter for further proceedings, it denies plaintiff's requests (1) to remand this matter to a different ALJ because of an alleged Appointments Clause violation, and (2) to remand for the calculation and payment of benefits.

A.   <u>Appointments Clause Challenge</u>

Plaintiff asserts that he is entitled to a new hearing before a different ALJ because at the time of the <u>first</u> administrative hearing on April 25, 2018, ALJ Sweeney was not constitutionally appointed. <u>See</u> Doc. #16-1 at 5-7. Plaintiff contends that, "[a]lthough testimony was not taken at the April 25, 2018 hearing, the ALJ was tainted by his involvement with the case." <u>Id.</u> at 7. Defendant responds that "at all times relevant to the ALJ's April 23, 2020 decision that is at issue in this case, [ALJ Sweeney] had been properly appointed by the

Commissioner of Social Security." Doc. #20-1 at 4. Defendant
further asserts that because the ALJ's 2018 decision is not
before the Court, plaintiff's Appointments Clause challenge is
improper. See id. at 5. Plaintiff replies, in pertinent part,
that the original constitutional deficiency remains "present and
uncured." Doc. #22 at 2.

     1.   *Applicable Law*

On June 21, 2018, the United States Supreme Court
reaffirmed a prior holding that "one who makes a timely
challenge to the constitutional validity of the appointment of
an officer who adjudicates his case is entitled to relief."
Lucia v. S.E.C., 138 S. Ct. 2044, 2055 (2018) (citation and
quotation marks omitted).[3] "[T]he appropriate remedy for an
adjudication tainted with an appointments violation is a new
hearing before a properly appointed official." Id. (citation and
quotation marks omitted). The new hearing must not be held
before the original ALJ "even if [the ALJ had] ... received (or
receive[d] sometime in the future) a constitutional
appointment." Id. Thus, "[t]o cure the constitutional error,
another ALJ ... must hold the new hearing" to which a claimant
would be entitled. Id.; see also Social Security Ruling ("SSR")

---

[3] There is no contention that plaintiff's Appointment Clause
challenge is untimely.

19-1P, 2019 WL 1324866, at *1 (S.S.A. Mar. 15, 2019) (explaining how cases "pending at the Appeals Council, in which the claimant raised a timely challenge to the appointment of an [ALJ] under the Appointments Clause of the United States Constitution[,]" would be adjudicated "in light of the Supreme Court's recent 2018 decision in Lucia v. SEC, 138 S. Ct. 2044 (2018).").

> Like the SEC ALJs at issue in Lucia, SSA ALJs had been selected by lower level staff rather than appointed by the head of the agency. On July 16, 2018, a few weeks after Lucia was decided, the SSA's Acting Commissioner pre-emptively addressed any Appointments Clause questions involving Social Security claims by ratifying the appointments of all SSA ALJs and approving those appointments as her own.

Carr v. Saul, 141 S. Ct. 1352, 1357 (2021 (citation and quotation marks omitted).[4]

### 2. Analysis

This case presents a somewhat unique procedural posture in the face of an Appointments Clause challenge. There is no dispute that at the time of the initial hearing on April 25, 2018, ALJ Sweeney had not been properly appointed. See Doc. #16-1 at 6; Doc. #20-1 at 5. However, by the time ALJ Sweeney held the second administrative hearing on July 25, 2018, see Tr. 81-116, and for all proceedings and decisions thereafter, his

---

[4] Carr ultimately held that an Appointments Clause challenge did not have be raised during the administrative proceedings to preserve that issue for judicial review. See Carr, 141 S. Ct. at 1362.

appointment had been ratified by the then-Acting Commissioner of the Social Security Administration. See Carr, 141 S. Ct. at 1357. Accordingly, the question before the Court is whether the initial constitutional deficiency taints ALJ Sweeney's later proceedings so as to warrant remand of this matter for a new hearing before a different ALJ.

Defendant contends that the answer to the question is "no" because

> [t]he fact that Plaintiff previously appeared for a hearing before the same ALJ in April 2018, is of no moment here because the ALJ's prior 2018 decision was vacated by the Appeals Council in November 2019. And, after the Appeals Council's remand (which was after such time as the ALJ was properly appointed), the ALJ conducted a new hearing in April 2020 and issued a new April 23, 2020 decision.

Doc. #20-1 at 5 (citations to the record omitted). Although the Second Circuit has yet to address this issue, several other district courts have rejected similar arguments by the Commissioner, finding that the issuance of a subsequent decision after the ALJ was properly appointed continued the prior constitutional violation rather than cured it. See, e.g., James R. v. Comm'r of Soc. Sec., No. 20CV05632(SKV), 2021 WL 4520560, at *7 (W.D. Wash. Oct. 4, 2021) ("Thus, irrespective of her appointment status at the time of the 2019 hearing, ALJ Dantonio's participation in Plaintiff's administrative case continued — rather than cured — the constitutional violation

attendant to the first decision. Because Plaintiff's 2019 hearing violated *Lucia's* mandate, it did not, as the Commissioner argues, cure the first decision's constitutional defect."); *Elissa K. v. Comm'r of Soc. Sec.*, No. 20CV05956(SKV), 2021 WL 4452849, at *7 (W.D. Wash. Sept. 29, 2021) (The court rejected the Commissioner's argument that ALJ's "subsequent ratification of appointment, prior to the second hearing, remedied the first hearing's constitutional defect[,]" given "*Lucia's* instruction that an Appointments Clause violation should be remedied by a new hearing and another ALJ must hold the new hearing[.]" (emphases removed)); *Mary D. v. Kijakazi*, No. 3:20CV00656(RAR), 2021 WL 3910003, at *10 (D. Conn. Sept. 1, 2021) (*sua sponte* remanding matter to a different ALJ where plaintiff's "first administrative hearing proceeded before an ALJ who was not constitutionally appointed; [and] her second administrative hearing was before the same ALJ who was constitutionally appointed at all relevant times for the second hearing and decision[]"); *Brown v. Saul*, No. 2:19CV01590(PLD), 2020 WL 6566221, at *4 (W.D. Pa. Nov. 9, 2020) ("The Commissioner's after-the-fact ratification of ALJs ... was not consistent with what the Administration said it would do in SSR 19-1p[]" and "is inconsistent with the holding in *Lucia*.").

In each of these cases, however, the constitutional violation was present at the time of the <u>substantive</u> administrative hearing, before the ALJ issued his or her decision. <u>See</u> <u>James R.</u>, 2021 WL 4520560, at *7; <u>Elissa K.</u>, 2021 WL 4452849, at *1, *7; <u>Mary D.</u>, 2021 WL 3910003, at *10-11; <u>Brown v. Saul</u>, 2020 WL 6566221, at *1, *4. By contrast here, and as asserted by defendant, the April 25, 2018, proceeding was <u>not</u> a substantive hearing. No testimony was taken, and nothing was decided, other than to continue the substantive hearing. <u>See</u> Doc. #20-1 at 6-7.

The decision in <u>Dupell v. Saul</u>, No. 20CV00296(TRR), 2020 WL 5653467, at *1 (E.D. Pa. Sept. 23, 2020), is instructive because the procedural posture in <u>Dupell</u> is nearly identical to that at issue here. In <u>Dupell</u>, the claimant appeared at an administrative hearing in May 2018, before the ALJ presiding over his case had been properly appointed. <u>See</u> <u>id.</u> at *1. At this hearing, a date was set for the substantive administrative hearing, "and Dupell was also informed of his right to counsel and the process for obtaining medical records, the same administrative information that is regularly provided to claimants in writing." <u>Id.</u> at *2. The claimant in <u>Dupell</u> asserted that because the ALJ was not constitutionally appointed at the time of the May 2018 hearing, the <u>Lucia</u> violation

continued to the substantive hearing in September 2018. See id.
at *1. The District Court, however, disagreed, noting that the
May 2018 hearing was "not 'the hearing' guaranteed by the
statute[,]" because "[t]hat hearing took place on September 11,
2018, well after the Social Security ALJ was constitutionally
appointed on July 16, 2018[.]" Id. at *2 (quoting 42 U.S.C.
§405(b)(1)). Accordingly, "[b]ecause the ALJ functioned as an
ALJ only during the September 2018 hearing, Dupell's Lucia
rights were not violated." Id.

Similar to Dupell, during the April 25, 2018, hearing ALJ
Sweeney simply postponed the substantive administrative hearing
and advised plaintiff of his rights. See generally Tr. 117-22.
This was not the type of hearing contemplated by the statute,
but was instead a "routine proceeding[.]" Mangual Negron v.
Kijakazi, No. 20CV01365(CVR), 2021 WL 3408555, at *2 (D.P.R.
Aug. 3, 2021); see also 42 U.S.C. §405(b)(1). Accordingly,
because the ALJ was constitutionally appointed at the time of
plaintiff's substantive hearing on July 25, 2018, his "Lucia
rights were not violated." Dupell, 2020 WL 5653467, at *1; cf.
Mangual Negron, 2021 WL 3408555, at *2 (The court distinguished
Dupell and found a Lucia violation where "even though the
[first] hearing was not on the ultimate merits of the case," the
ALJ "adjudicate[ed] ... an important portion of the case[]" at a

time when the "ALJ ... had no constitutional authority to hear this matter at the time the first hearing took place.").

Therefore, there is no Appointments Clause violation, and plaintiff's request to remand on this basis is DENIED.

B. <u>Credibility Determination</u>

Plaintiff contends that the ALJ failed to properly evaluate his credibility. <u>See</u> Doc. #16-1 at 18-19. Defendant responds that the ALJ appropriately evaluated plaintiff's subjective complaints. <u>See</u> Doc. #20-1 at 14, 19-21. In reply, plaintiff reiterates that the ALJ's credibility determination is not supported by substantial evidence, particularly because the ALJ failed to consider and address plaintiff's explanations for not pursuing more than conservative treatment. <u>See</u> Doc. #22 at 6-7.

1. *Applicable Law*

Although "the subjective element of pain is an important factor to be considered in determining disability[,]" <u>Mimms v. Heckler</u>, 750 F.2d 180, 185 (2d Cir. 1984), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." <u>Rivers v. Astrue</u>, 280 F. App'x 20, 22 (2d Cir. 2008). "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain

alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The Regulations set forth a two-step process that an ALJ must follow in evaluating a plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §§404.1529(b), 416.929(b). Second, the ALJ must assess the credibility of plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §§404.1529(c), 416.929(c).

In making this assessment, the ALJ should consider factors relevant to plaintiff's symptoms, "such as [his] daily activities, duration and frequency of pain, medication, and treatment." Jazina v. Berryhill, No. 3:16CV01470(JAM), 2017 WL 6453400, at *7 (D. Conn. Dec. 13, 2017); see also 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3). The ALJ must consider all evidence in the case record. See SSR 16-3P, 2017 WL 5180304, at *8 (S.S.A. Oct. 25, 2017).

*2.    Analysis*

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 47. The "other evidence" considered by the ALJ included plaintiff's 2018 testimony, see Tr. 47, and 2016 activity of daily living report, which, according to the ALJ, "noted that [plaintiff] could care for personal needs, attend to a garden, shop, cook, play music, wash laundry, drive, and use a push mower (Exhibit 3E)." Tr. 48.[5] The ALJ also considered that plaintiff

> did not seek more than ... conservative treatment.
> Rather, at the hearing in 2018, he testified that he
> used other conservative measures on his own such as yoga
> and acupressure. He indicated that he did not take
> medication. He stated that although he would be willing
> to attend additional chiropractic treatment, he would
> not seek other treatment for his neck and backpain. He
> reported that he was able to live on his own. He could
> do some yard work, though he had trouble. He could drive,
> prepare food, wash laundry, clean, and grocery shop.

Id.; see also Tr. 51 ("He is not in acute distress. He is able to live independently and perform activities of daily living with some reported limitation. He has not required more than

---

[5] The ALJ also considered plaintiff's "additional statements regarding his impairments" that were authored in October 2018 and March 2020. Tr. 47. These documents paint a much more guarded outlook of plaintiff's daily activities than the ALJ's decision suggests. See generally Tr. 581-89; Tr. 666-69.

conservative treatment for his pain and has been able to manage with chiropractic manipulation and at home exercises.").

Plaintiff contends that in making his credibility determination, the ALJ placed disproportionate weight on plaintiff's activities of daily living. See Doc. #16-1 at 18-19. Defendant responds that "the ALJ properly considered Plaintiff's subjective complaints[,]" and "properly found Plaintiff's allegations inconsistent with the record as a whole[.]" Doc. #20-1 at 13. Defendant further asserts that: (1) "there is no evidence that Plaintiff sought and was denied low-cost treatment from other sources[;]" and (2) "Plaintiff's family's good health is not relevant to why he did not seek treatment for his allegedly disabling impairments." Doc. #20-1 at 20. In reply, plaintiff takes issue with both of these statements, contending in relevant part that, in contravention to SSR 16-3P, the ALJ failed to consider and address plaintiff's reasons for not pursuing more aggressive treatment. See Doc. #22 at 7.

When making a credibility assessment, the ALJ may consider conservative treatment "along with other factors." Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019). However, where

> the frequency or extent of the treatment sought by an
> individual is not comparable with the degree of the
> individual's subjective complaints, or if the individual
> fails to follow prescribed treatment that might improve

> symptoms, ... [the SSA] will not find an individual's
> symptoms inconsistent with the evidence in the record on
> this basis without considering possible reasons he or
> she may not comply with treatment or seek treatment
> consistent with the degree of his or her complaints.

SSR 16-3P, 2017 WL 5180304, at *9. Here, the ALJ did not

consider or address <u>any</u> of the explanations offered by plaintiff

for his conservative medical treatment. Rather, the ALJ

conclusorily found that plaintiff's conservative treatment did

not support his subjective complaints. <u>See</u> Tr. 48.

   Plaintiff often complained to his treating sources of pain,

including back pain that he described as severe. <u>See, e.g.</u>, Tr.

787, Tr. 793, Tr. 853-56, Tr. 859. Dr. Noel, plaintiff's

chiropractor, often noted the presence of multiple "muscle spasm

and myofascial trigger points" during plaintiff's appointments.

<u>See</u> Tr. 685, Tr. 736-44, Tr. 851-56, Tr. 861. Plaintiff's

complaints are further confirmed by the objective evidence,

including a finding in 2017 of "[m]ultilevel degenerative disk

disease ... throughout the lumbar spine most severe at L5-L6

where there is severe disk space narrowing and degenerative

spurring." Tr. 758. Despite this, as noted by the ALJ, plaintiff

sought minimal treatment, mostly in the form of chiropractic

care. <u>See</u> Tr. 48 ("He stated that although he would be willing

to attend additional chiropractic treatment, he would not seek

other treatment for his neck and back pain."); <u>see also</u> Tr. 681-

85 (records of chiropractic care); Tr. 691-98 (same); Tr. 851-56 (same); 861-63 (same).

The record, however, is replete with explanations as to why plaintiff did not engage in more extensive treatment. Plaintiff first testified on July 25, 2018, that "all my life I try to stay away from doctors. My dad's never seen a doctor, his dad never seen a doctor [and they each lived well into old age]. ... But that's why my mentality is probably more towards I want to stay away from hospitals and doctors." Tr. 96. This is generally consistent with other notations throughout the record. See, e.g., Tr. 439 (July 5, 2016, Report of Contact: "He stated he has not been to a doctor since 2008 for his medical conditions. His father raised him not to go to doctors and not to take medication. ... Throughout the interview he continuously reflected on his father and how he is and how he was raised not to do things."); Tr. 581 ("I've never been a person who frequents doctors."); Tr. 588 (explaining the naturopathic remedies he has used, including diet, yoga, acupressure, and vitamins); Tr. 666 ("I choose to deal with this problem Holistically (without drugs or surgery)." (sic)); Tr. 799

(psychiatric record noting that plaintiff's elderly father had never seen a doctor).[6]

Other than noting plaintiff's holistic treatment, the ALJ did not otherwise acknowledge or address any of the reasons offered by plaintiff to explain his "conservative" treatment. See generally Tr. 48-51. For example, the ALJ stated that plaintiff "did not take medication[,]" without any consideration of plaintiff's reason for such avoidance —— the fear of side effects. Indeed, plaintiff testified that he does not take pain medicine "because of the side effects[]" which would make him "worse off than putting up with the pain." Tr. 106; see also Tr. 666 ("I'm not going to seek treatment from orthopedic doctors as they would address my back problems with prescription drugs (which all have side effects) or recommend surgery. I won't take prescription drugs or have surgery. I choose to deal with this problem holistically (without drugs or surgery)."); Tr. 588 ("I've seen the results of some of my friends thru the years with back problems and do not want to try surgery. Everybody I've talked with that has had this back surgery wishes that they had dealt with it the way it was before their surgery." (sic)).

---

[6] Plaintiff also stated that he chose not to obtain additional imaging of his back because it "will show the same as the xrays already taken. I don't feel the need to be exposed to further radiation." Tr. 667.

The ALJ should have at least acknowledged plaintiff's reasons for not taking medication rather than merely stating that he "did not take medication." See SSR 16-3P, 2017 WL 5180304, at *9-10 ("When we consider the individual's treatment history, we may consider (but are not limited to) one or more of the following: ... An individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms."); see also Greene v. Berryhill, No. 3:17CV01241(JCH), 2018 WL 8646666, at *8 (D. Conn. Aug. 10, 2018) (ALJ erred where he "did not expressly consider the reason [claimant] provided for why she was no longer taking several pain medications she had already tried.").

Finally, and perhaps most importantly, plaintiff also testified that he did not pursue more chiropractic treatment due to financial constraints. See Tr. 107-08. This sentiment is reflected throughout the record, yet it was not addressed by the ALJ. See Tr. 585 ("I pay the chiropractor Dr. Noel cash as he does not accept husky insurance no longer[.] ... This is a problem because of financial situtation." (sic)); Tr. 589 ("[T]he lack of being able to pay for Dr. Noels service makes it even more difficult." (sic)). Plaintiff also noted that he did not want to use his state-sponsored health insurance because he feared that the state would place a lien on his home. See Tr.

584-85 ("At this point with information of x rays I stopped
seeing Stephaine Berhans and use of Husky insurance because I
fear that my property (home) will have a lien attached to my
home."); Tr. 586-87 ("Again I fear that if I use to much State
Aid I will lose my house." (sic)). Whether or not this is a
rational fear, the ALJ was obligated to acknowledge it. See
Bernadel v. Comm'r of Soc. Sec., No. 14CV05170(PKC), 2015 WL
5719725, at *14 (E.D.N.Y. Sept. 29, 2015) ("Courts in this
Circuit have observed that a claimant's credibility regarding
her impairments should not be discounted for failure to obtain
treatment she could not afford[.]").

The Court is aware that in some instances, an ALJ's failure
to consider reasons for a plaintiff's conservative treatment may
amount to harmless error, if other reasons were considered by
the ALJ in making the credibility determination and those
reasons are supported by substantial evidence. See, e.g., Snyder
v. Colvin, 667 F. App'x 319, 320 (2d Cir. 2016). Here, however,
the ALJ appeared to place disproportionate weight on plaintiff's
activities of daily living, none of which "equate to the ability
to perform substantial gainful activity." Berg v. Colvin, No.
3:14CV01042(SALM), 2016 WL 53823, at *8 (D. Conn. Jan. 5, 2016).
"There are critical differences between activities of daily
living (which one can do at his own pace when he is able) and

keeping a full time job." Moss v. Colvin, No.
1:13CV731(GHW)(MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16,
2014). Plaintiff is indigent and presumably cannot afford to pay
for laundry, snow removal, laundry, or cleaning services. That
plaintiff is willing to endure pain to minimally maintain his
yard, or the cleanliness of his clothes and home,[7] should not be
held against him. Indeed, "when a disabled person gamely chooses
to endure pain in order to pursue important goals, ... it would
be a shame to hold this endurance against him in determining
benefits unless his conduct truly showed that he is capable of
working." Balsamo, 142 F.3d at 81–82 (citation and internal
quotation marks omitted); see also Moss, 2014 WL 4631884, at *33
("It is well-settled in the Second Circuit that the capacity to
care for oneself does not, in itself, contradict a claim of
disability as people should not be penalized for enduring the
pain of their disability in order to care for themselves."
(citation and quotation marks omitted)). Plaintiff's treatment
and reported activities of daily living say nothing about his
ability to perform medium work as a flagger, particularly in

---

[7] Plaintiff reported: "I vacuum once, maybe every two weeks
(small home) washing any clothes I have done my one pair of
jeans in the skink for years. I don't go out regularly – maybe
twice a week to get food." Tr. 582 (sic).

light of the objective medical evidence reflecting his severe spinal impairment.

Accordingly, the Court finds the ALJ erred in his evaluation of plaintiff's credibility. In light of this finding, the Court does not reach plaintiff's remaining arguments. On remand, however, the ALJ shall address plaintiff's arguments not considered herein, particularly those directed to the ALJ's evaluation of the medical opinion evidence.

C.   Remand for Further Administrative Proceedings

Plaintiff states that the ALJ's "decision should be reversed and remanded for payment of benefits or remanded for a new hearing and a decision based on substantial evidence and proper legal standards under sentence 4." Doc. #16-1 at 21.

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). Reversal with a remand solely for a calculation of benefits is appropriate only where "the record provides persuasive evidence of total disability that renders any further proceedings pointless." Stacey v. Comm'r of Soc. Sec. Admin., 799 F. App'x 7, 11 (2d Cir. 2020) (citation and quotation marks omitted). Here, a further review of the evidence

would "plainly help to assure the proper disposition of the claim[.]" Butts, 388 F.3d at 385. Moreover, given the errors claimed by plaintiff, including that the ALJ failed to properly evaluate his credibility, a remand for further proceedings, as opposed to a remand for a calculation of benefits, is the appropriate remedy.

There is, however, a "'no purpose' remand[,]" which "is grounded in equitable considerations and is often deployed where prior administrative proceedings and litigation have consumed an inordinate length of time." Munford v. Apfel, No. 97CV05270(HB), 1998 WL 684836, at *2 (S.D.N.Y. Sept. 30, 1998). Plaintiff's original applications have been pending for quite some time –– over five years –– and have already been the subject of one administrative remand. See Tr. 186-91, Tr. 383-96. Although "length of time is certainly a relevant factor in the determination of whether to remand for further proceedings or remand solely to calculate benefits[,]" Talanker v. Barnhart, 487 F. Supp. 2d 149, 160 (E.D.N.Y. 2007), it is not the only factor the Court considers. Plaintiff makes no argument that he meets a listing or that further administrative proceedings would serve no purpose.

Accordingly, this matter is hereby remanded for further administrative proceedings consistent with this Ruling. Finally,

the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate for the reasons discussed herein.

## VI.   <u>CONCLUSION</u>

For the reasons stated, plaintiff's Motion for Order Reversing the Commissioner's Decision **[Doc. #16]** is **GRANTED, in part,** to the extent he seeks a remand for a new hearing, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #20]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 16th day of December, 2021.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE